at all, Ms. Kramer, Mr. Fishman, and Mr. Rosen, whenever you're ready. Thank you, Your Honor. Good afternoon, Your Honors, and may it please the Court. My name is Jenny Kramer, and I represent the appellate in this matter, John Doe. With the Court's permission, I would like to reserve three minutes for rebuttal. That's fine. Thank you. Your Honors, in this case, the district court order should be reversed, because the conservative letter is neither a bill of particulars... Why did you wait so long to intervene in this case? Your Honor, the John Doe intervened at the appropriate time in this case, because at the district court level below, the government submitted its arguments in connection with the media's arguments. The media originally intervened. And when it became clear that the government was not going to repeal once the court made the decision to release the letter, that was the appropriate time for John Doe to intervene. And that was set forth in our moving papers. When it becomes clear that a party is not going to continue to pursue the interests of John Doe, which interests were being pursued by the government preliminarily, it became clear that at that moment in time, it was the right time to intervene. So on that point, the folks from the media argued pretty aggressively that the government never said that this was anything other than a bill of particulars in the court below, and that, in fact, the district court said, and I'm quoting from page 4 of the May 10 letter, quote, the First Amendment and common law rights of access extend to bills of particulars, unquote, and goes on to discuss it in terms of a bill of particulars. If the government, in fact, didn't move for reconsideration and chose not even to appeal, is the district court's discussion of this in terms of being a bill of particulars something that should weigh on our minds in the face of your argument that it's clearly not a bill of particulars, that is, that the district court seemed to think of it as a bill of particulars and the government didn't take issue with that after that statement from the court? No, Your Honors. The government's silence on that issue should not then lend favor to this court giving extra weight to the district court's determination that the letter was a bill of particulars. The precise issue before this court is whether the conspiracy letter was, in fact, a letter of discovery, which it was. The letter was nothing more than a letter in discovery that the government provided to the defense. Then why did the district court think it was a bill of particulars? What led Judge Wiginton to say, you know, hey, in effect, we're talking about a bill of particulars here. The discussion is all about a bill of particulars. Why did she think that? Your Honor, in fact, the district court order never calls the letter a bill of particulars. She starts her analysis by saying the First Amendment and Common Law Rights of Access extend to bill of particulars. Now, I guess we could say she just wanted to give us a little bit of insight into bills of particulars, but isn't it a more logical conclusion that she's talking about bills of particulars because she thinks the document at issue is a bill of particulars? And if she so thinks, Your Honor, she is wrong, and that is why we are here today. It is not a bill of particulars. That she'd never had argument on this particular point? No, Your Honor. There hasn't been. There was the argument below in the motion to intervene. But as to this being a bill of particulars, as Your Honor correctly knows, the district court erred when it determined that this document is, whether it's a bill of particulars or any other type of judicial record to which the presumption of access attaches, it is not. It is a discovery letter. At the hearing that was in early January, was a bill of particulars discussed at that time? I'm sorry. Did Your Honor mean the February 5th hearing that occurred afterwards? Yes. No, that was the discovery. That was a hearing in which the court disposed of as new additional discovery motions. The bill of particulars aspect was not something that was discussed at that time, which is further to the point that this, not back in January, not then, and not now, has ever been a bill of particulars. And if I may. That's what I want to try to press you to get an answer. And maybe you don't have one or we can't figure it out. Why did the district court judge take it as a given in the start of her analysis that what was that issue was a bill of particulars? Can you give us any insight into what was going on in the district court that would have led the district court to lead with that? Sure, Your Honor. So it appears that the district court viewed the provision of the letter to the defense at a time when the motion for the bill of particulars was pending. It appears that the court viewed the provision of the letter in response to the motion for a bill of particulars as making it a bill of particulars. But that's just not the way bill of particulars function. As this court held in United States v. Smith when it extended the presumptive right of access to bills of particulars, it did so. It did so because the nature and function of a bill of particulars is to supplement the indictment. It's to supplement the charging document by which the entire criminal process emanates. It serves to limit the government's case. It serves to establish parameters. The previous case filed by the defendants here was a motion. It was called discovery motion. But it also, within the motion, requested a bill of particulars. Correct. So there's a whole lot of words going back and forth that could be interpreted one way and then in the same document another way. The government's brief, it could be interpreted one way, same document another way. And that's why we're here today. Smith, in one sense, is a very different case in that there were unindicted co-conspirators that the government believed it had evidence on and those it conceivably could have fought an action. There was an overbreath issue there. But, you know, to some extent, I'm not quite sure how on point Smith is because of the facts of that particular case. Well, as an initial matter, Your Honor, Smith is not on point at all in connection with the first argument that this is and always has been a discovery letter to which the presumptive right of access does not attach. However, were Smith, to apply, Your Honor, as you are suggesting, were the court to have ordered a bill of particulars, which it did not, were this court to determine that the conspirator letter wasn't? Let me go back to Judge Jordan's question. It looks as if the district court believed that a bill of particulars was involved here. I mean, maybe one can't say that there was a finding that this is what it was. But otherwise, you wouldn't have done the balancing of Smith, would you? Isn't that correct? That's correct, Your Honor. And, again, it's Mr. Doe's position that that finding of the court was in error and that order should be reversed because this is a far cry from a bill of particulars to which the public enjoyed the presumptive right of access. If you look historically at why the public enjoyed that right of access to this process, it's to enable the public to appropriately evaluate the conduct of the court and of counsel and to appraise the fairness of the criminal justice system. It's about the process where discovery is about privacy. It's about robust, evolving discovery whereby the government provides the fruits of its investigation. Ms. Kramer, let me, yeah, we've got a feel for the difference between a bill of particulars and a discovery letter, but let me ask you something on another point. We've had from the media a couple of times the assertion that, look, even if Doe's name doesn't get out there, he's got no standing to argue about the other people. Do you object to the release of the conspirator letter with your client's name redacted? Absolutely, Your Honor. Well, first, tell me why, and then, second, what gives you standing to make that argument on behalf of everybody else on the list? Well, Your Honor, the release of the letter with a redacted name in it will only further narrow the universe for the public who already has its ideas who the unindicted co-conspirators may be. It will only further narrow that universe of people and allow the public to potentially better deduce who the person could be. So the standing of John Doe. What gives you the standing to make that argument for those other people? Because his name is on that list, that list, by the way, of names, which is the result of the unilateral determination of the U.S. Attorney. Because his name is on that list, if his name only is redacted and the other names are released, it makes the likelihood greater than not that the public could figure out who he is. Now, how are we to assess that argument? When we don't know how long the list is, we don't know who the other names on the list are. We have not seen the letter. That would make you up, Your Honor. So, yes, how are you to assess that? I would submit under the Smith balancing test, as I was going to say earlier. Which is a factual matter, not as a legal matter. How are we to assess the argument that you're making a process of elimination argument here, but if the universe of potential people is, you know, 40, I don't know how many it is. Nobody has suggested how many people there might be. And the number of names that are released on the list is three, because there's only four unindicted co-conspirators. How does that make it any nearer, like, oh, my gosh, it's going to be clear and obvious that it's my client? You're just asking us to speculate, aren't you? No, I'm not asking you to speculate. It's already quite clear in the media surrounding this, you know, unusually high-profile case that the public has already come to certain decisions about who the unindicted co-conspirators may or may not be. And it does go back to the Smith balancing test, because in Smith, the court determined it was a bill of particulars, but specifically held that the privacy interest of those named on that list outweighed the public interest in learning of the information at that moment. And, Your Honors, were Smith to apply here, were this court to determine that this is, in fact, the type of record to which the presumption attaches. The privacy interest of Dill must outweigh the public interest. And why? Do you think Dill will be called as a witness at trial? Your Honor, that question is precisely the point I don't know, and that is precisely the point I was about to make. At this point, there's no adjudicatory significance to this letter. It is an evolving process. It was provided during discovery. That is exactly the point. If you say there's no adjudicatory significance to this letter, then why do you care? I care because every court in this nation who has confronted the pretrial revelation of the names of unindicted co-conspirators has found a due process violation. Then there is significance to this letter. I'm sorry? Then there is significance to this letter. There's significance in not disclosing it. There's a tremendous interest in not disclosing it because, Your Honors, at trial, if there is even a trial, the case doesn't resolve. We understand, I think, the privacy interests. You've argued them effectively in your written submissions. But when you say there's no adjudicatory significance, what are we to make of the district court ruling that certain motions were moot in light of what was discussed at a conference and then the conspirator letter is delivered? Is there adjudicatory significance in the fact that this conspirator letter is delivered and then there's a ruling about mootness, which one could say maybe that affected the judge's ruling? Do you understand what I'm trying to answer? I do understand, Your Honor. What Your Honor is suggesting is not, in fact, the case. The court's dismissal of the remaining motions as moot should not weigh into the court's findings or that everybody involved should speculate that, in fact, by declaring the discovery motions moot, that deems a discovery letter a bill of particulars. Historically and legally speaking, that just doesn't cut it. A bill of particulars is a very specific document that serves to limit the government's case. It was never ordered, it was never filed as a bill of particulars, and it was never filed as a bill of particulars. Do you still maintain that the government did not have sufficient evidence in order to label your client an unindicted co-conspirator? Your Honor, what- The government has taken strong issue with that. Yes, Your Honor. There is a due process issue here as to whether there's been no opportunity to challenge the designation. However, that due process issue is not even, for this Court's consideration, a well-settled law that clearly states that if the Court can decide- the Court must, I apologize, must, and has a duty not to decide a constitutional issue if the matter can be disposed of on other grounds. Well, we can do it on the bill of particulars issue without getting into due process. And if this Court were to so find that this letter is a bill of particulars, then dismiss applies and the privacy interests of Doe outweigh the public's interest in accessing this information. To allow the public to access this information at this time would be to allow the public into the tent of the discovery process and giving them a first front row seat to the very private, robust process that exists between the government and the defense. It's a critical process and, Your Honors, it's why no court has ever held that the public should have access to that process. What is the standard of review here with regard to the district court's determination that this confidentiality letter should be made public? Your Honor, in connection with the Court's determination that it is, in fact, ultimately either a judicial record or bill of particulars, because it invokes the First Amendment, and plenary review, as we articulated, as I articulated in my brief to the Court, would be the appropriate standard of reviewing in connection with the First Amendment analysis. There's a constitutional law issue here. De novo review. Why isn't it abuse of discretion? The modified abuse of discretion relates to the Court's, the inability of the Court to appropriately weigh the balance in tests. You know, in the Court below, the judge basically stopped at the point where she said that the balancing test, she used the balancing test and ultimately said that the privacy interests were considered, but they didn't outweigh the public's interest, and she stopped there. And ultimately the Court said that Doe could not prove a likelihood of success on the merits and fell short of what really needed to happen. But because of the constitutional issues implicated, it is a de novo standard of review. Do you use a balancing test if this were merely a Rule 16 discovery? If this were merely a Rule 16 discovery, we likely wouldn't even be here. So you would not be using a balancing test then, right? If there's no constitutional law piece of it implicated, it would depend on the facts of the particular case. Here this is a discovery letter that was provided to the defense to furnish them with the fruits of the investigation. You know, the reason for the public to have access to the judicial process and have a peek at what's going on is to ensure that the judicial process is functioning properly. It's so that when charges are leveled, they are leveled in broad daylight, so the public can ensure itself and ensure that things are functioning the way they should. One of the things that was said here, Ms. Kramer, in the media's SOAR reply brief, is that the government takes the position that the conspirator letter was communicated to defendants only for purposes of trial preparation. The media says, well, that just makes our point because, as the government itself notes, the purpose of a bill of particulars is to inform the defendant of the nature of charges brought against them, to adequately prepare the defense and avoid surprise during trial. In other words, the media seems to be saying the government gave the giving away. This is from pages 11 and 12 of the SOAR reply. Do you have a response to that argument? Absolutely, Your Honor, and as is addressed on page 19 of my reply brief. What the media has done there is they quoted United States v. Murray 297S2ndA12 from the Second Circuit in 1962. And what they did not include was the full sentence from that case, which read, the full quote reads, the function of a bill of particulars is to enable the accused to prepare for trial and to prevent surprise. And to this end, the government is strictly limited to proving what's at force in it. But it goes on to say, and it actually makes the uncontroverted point and truth, that because a bill of particulars serves to limit the government, and because the government has been limited to proving that which is set forth in a bill of particulars, those are all the precise reasons why this letter was, in fact, a far cry from a bill of particulars. Because it was not sent to the court for that reason. In fact, by the government's own statement, the government has argued, it sent the letter to the court. The Supreme Court, in the May 13th order, says, in effect, in response to your arguments, well, the government never marked this as a courtesy copy to us. She seems to be saying, look like you filed it with me. What's your response to that? Did she misunderstand or did the government just blow it? Or both? My response to that is that it is not a situation where something can merely look like a bill of particulars to call it one. And my response to that, Your Honor, is that when the judge received the letter, the government, as the government has argued, provided the letter with a request that it be maintained under seal for the specific purpose of ensuring and safeguarding the sanctity of the information contained therein. As the government has stated, it would be beyond ironic if the very act it took to ensure and safeguard the information that it's submitting to the court backfires and inadvertently triggers that which it's seeking to prevent, which is public disclosure. That's a good segue to get Mr. Fishman up. Thank you, Your Honor. Good afternoon. Paul Fishman, the United States Attorney for the District of New Jersey, appearing on behalf of the United States with the court's indulgence, I'd like to save two minutes for rebuttal, recognizing I'm with Judge Becker-Clark and the lights. You might be up next. Thank you, Judge. Do you anticipate or have any inkling as to whether a bill will be called to testify, Your Honor? I don't, Judge. And honestly, I don't think it makes any difference whatsoever, respectfully, to this court's determination. The question isn't whether the defense will be called. Well, the idea would be it's sooner or later. If you knew today or thought likely today that a bill would be called at trial, then it's sort of now or a few months from now. No, Judge, with all due respect, and I think when Judge Rickinson said in the footnote of her opinion, in the second opinion on the stay question of it, that this was inevitable, that his status would be disclosed inevitably, I think she could potentially trial that. Well, even if there is a trial, as the court knows, people are not identifying at trials as unindicted co-conspirators with all the opposition that that particular label may carry, unless there is an issue that crops up a trial under 801 D2E. Absent that, people get called to trial. They don't get called to trial. They're witnesses. They're not witnesses. Their roles are described by other witnesses or by documents. But the question before the court is not whether John Doe or anybody else in any case who is a co-conspirator will have a role described at trial. The question is whether this particular opinion of the United States Attorney's Office labeling Doe or other people who are like Doe, in this case or others, as a felon without any judicial test, without any adjudication, that's the question. So even if Doe is called, there's a reasonably good chance that that particular label will never come up. Well, let's hit the bill of particulars issue, okay? Of course. We've got from the media interveners a pretty aggressive argument, and there's a reply brief that you've got no business standing up here making that kind of argument. You're making it all about it not being a bill of particulars. You gave that away in the district court, and the district court understood you to be treating it as a bill of particulars, and the district court judge made that explicit in her May 13th order. And I just want you to go ahead. And I didn't even initially decide to appeal? Well, you didn't seek reconsideration when she treated it as a bill of particulars. You had decided not to appeal. The whole ball of wax. Why don't you just take on the you waived it and factored judicially a stopped argument made in the SIR reply? Well, I don't think we were. First of all, we did not appeal. The government elects not to appeal in the middle of pretrial proceedings all the time for a variety of reasons. The fact that I'm here arguing this on behalf of my office, I think, suggests to the court how important we think this question is as a policy matter, not just with respect to John Doe. Yeah, it was so important you had appealed. I'm sorry. I'm sorry. It was so important you had appealed. Well, we need to not take a back step. Take a back step. Even if it was so important, why didn't you go back to the district court judge and say, hey, Your Honor, you said you started out talking about this as a bill of particulars. It was never a bill of particulars. Did you ever bring that to her attention in any way, shape, or form? So the answer is in our very first brief in response to the media's request, we characterized it in our preliminary statement as pretrial communications. So, yes. Oh, wait, wait, wait, wait, wait. It's on page 186, and that's about the only page I've got. That's correct. And look, I agree with the court. Don't suggest that you're agreeing with me because I'm not telling you how to do it. I'm trying to ask you questions, and the question I'm trying to get your response to now is, once she came out of the box on May 10th and started talking about this as a bill of particulars and ruling it on the basis of it being a bill of particulars, why didn't the government do anything to say, I mean, if this was so important to government, why didn't somebody go forward and say, Judge, there's a misapprehension here? I can't give an adequate answer to this court on that question. What I will say to the court is that when Doe's request for a stay and appeal was docketed in this court and this court asked for our views in this case, I thought it incumbent on my office to provide to the court what we honestly believed was the correct answer to the questions before the court, which are, A, is it a bill of particulars? Our answer is no. B, was the letter to the court a judicial record? Our answer is no. And C, even if it is a bill of particulars, we quite firmly believe, as we said in our brief, that Smith dictates that the letter not be disclosed. So if the answer was no and no so emphatically, why not say so in the district court, other than elliptically on one page of your brief in response to the discovery motion of Barone? As I said, Judge, I think we should have been clear. I think we did say, and I think it's pretty clear in the brief that we filed in response to Mr. Barone's and Ms. Kelly's motions for bill of particulars. We stated quite clearly in that brief that we did not believe that they were entitled to bills of particular. And not surprisingly, as the court knows, this dialogue happens in different contexts in many cases. There are many cases in which we have said in the grand jury indictment there are others who are co-conspirators. It would obviously be inappropriate, wildly inappropriate, for us to identify who those people are in the indictment. It would be wildly inappropriate for us to say publicly who they are. In every case, in every case, we get a request from defense. Sometimes it's by phone, sometimes it's by letter. In this case it was by motion to tell us who those people are. And as we did in this case in response to the motion, if there had been a phone call, we would have said a phone call in this case because we believed in this particular case that it was appropriate to help the defense prepare for trial. I think it goes too far, as Judge Gordon, I think you asked before about, well, didn't the government give the game away, as the media suggests, by saying it was for the purpose of trial preparation? Everything we provide in discovery is for trial preparation. That proves way too much. Can you take us sequentially through the steps dealing with Judge Wiginton and all of this? There were hearings and... There was first a motion for discovery inside the motion that asked for a bill of particulars. You responded to the motion. And there's language that goes both ways as to whether you were deeming this to be one or the other or maybe you were trying to do the alternative. But start from the beginning. There's a motion for discovery, which contains a bill of particulars, and then what happens? That's correct. And in response to that motion, which, by the way, wasn't just a request for a bill of particulars on this issue. There were a litany, as this court has seen before, a litany of requests that the defense made that they wanted Judge Wiginton to order in response to bill of particulars. And if you look at the government's opposition briefs, I know the court has, with respect to the unindicted co-conspirator question, we said that they weren't entitled to it. We couldn't have been clear. I know Mr. Rosen's brief characterizes it as a rhetorical response and then says we sort of abandoned it. But that's not true. We couldn't have been more unequivocal. I think that they weren't entitled to a bill of particulars. On that were the other points. On the other points, for example, the policies of the Port Authority with respect to traffic studies, on whether the bridge lanes were aligned in a particular way, with respect to the $5,000 requirement under Section 666, they wanted rules of particulars on those too. We said not entitled to it. But in the brief itself, in the brief itself, we actually provided some of that information to the defense because we didn't care about that being public. But with respect to this particular question, with respect to the question about the identity of any unindicted co-conspirators, we said we're going to do this separately in a letter, which we will then send to the court, file with the court under seal. And that's exactly what happened. Two days later. Can you tell us what was said to the court when you sought that sealing? The letter, the letter, well, first of all, I know the court doesn't have that. I'm prepared to hand up a copy of the letter. You can confer with Ms. Cosgrove afterwards. We've got copies for the court here today, if the court finds that helpful. She's in the courtroom. But basically what the letter says is we asked the court to maintain under seal, we didn't ask the court to parse it, we didn't ask the court to decide whether we were right or we were wrong. All we said is this is a list of any unindicted co-conspirators, as to whom the government has sufficient evidence to so do this. Now, the court has a protective order already. But this was not subject to the protective order. If you look at the protective order. Although Judge Wiggin has said why not move to expand the protective order? We could have done that instead. But I think the media is looking at this with a far too nefarious eye. Our goal here was exactly what we said. Our goal was to make sure that this information, which we viewed as very sensitive for all the reasons that this court recognized in Smith, the opprobrium of the United States Attorney's Office describing somebody as a felon, without any judicial check on that determination, we thought that it was much better to keep that information protected. And it was in fact when you made that pitch to the district court, you did it in the context, as Judge Wiggin points out in her May 13th order, of a citation to the manual that describes policies regarding bills of particulars that identify unidentified co-conspirators, unindicted co-conspirators. That policy was referred to. But was that how you identified it? We referred to the entire, we quoted that particular sentence, but we referred to the entire matter of consent. When you choose to quote that particular sentence, does that lead the district court to believe that you believe you're dealing with a bill of particulars? I think the answer is it could, but at that point you need a citation. The sentence you quoted from the manual that notes, quote, specifically, close quote, that quote, with respect to bills of particulars that identify unindicted co-conspirators, prosecutors generally should seek leave to file such documents under seal. That's correct. But I think that that's what you did here. So the question is, if you were talking to the district court in terms of it being a bill of particulars, how can we fault the district court for treating it as if it were a bill of particulars? I'm not sure you should fault the court in that sense. You are asking us, you're supporting the reversal or the vacating of the order, right? Yes, we are, and on that and on other grounds, yes, that's correct. And the argument, the primary argument that you're pressing is the primary argument that Mr. Doe is pressing, which is this is not a bill of particulars. So what I'm trying to draw from you is how can the district court be faulted for treating it as a bill of particulars when the authorities you cite to the court are authorities which are, by their words, targeted at bills of particulars? In fact, if it was a discovery motion, you wouldn't be making that argument. If it was discovery, in other words, you wouldn't be doing the balancing, for example, that was under Smith. I mean, somebody, whoever drafted this, was thinking of it two ways. Maybe it was discovery, maybe it was bills of particulars, but never really said, hey, I'm addressing, we think it's discovery. If you really think it's a bill of particulars, okay, we'll do the balancing, but we don't think we have to. The briefs didn't say that at all. I don't disagree with that, Judge. As I said before, I think we could and should have been clear, but I want to take a point that Judge Sirica asked about earlier. There was no moral argument. There was no opportunity for that. And the problem here, honestly, is that because, and I think it was Judge Jordan who asked this earlier, the district court had no more information before it on this question than you do. There were no, there were no, there's no more colloquy, there's no more discussions. And so to the extent that there is a record, you've seen it. Let's go back to Judge Sirica. Let's get the timeline here. There was, there was ex parte communications with the court, is that correct? No, the only, no ex parte communications with the court, not to my recollection. I think the only communication with the court was after we filed our opposition brief with, on the bill of particulars and all the other omnibus discovery motions, and before there was a conference with the court to discuss whatever motions may have been still pending. We then sent the letter to defense counsel. At some point in that period, I don't remember exactly when, but I believe it was before the status conference with the court on pending discovery motions, the media, having seen our opposition brief and having said what we said we planned to do, filed this motion, which was then docketed as a separate civil proceeding. If this was a response to discovery, why file anything with the court? Honestly, Judge, we were concerned it was beyond the bounds of the protective order. There have been suggestions in papers filed by defense counsel, in this case, that discovery should be made available to the media. And so we thought the more prudent course to protect what we thought was very important here, which was the identity of anybody named in that letter, the appropriate course was to make sure that that document was under seal. Is it possible that any of the defendants might have thought at some point that it would be advantageous to them, ahead of trial, to release some names of their unindicted co-conspirators that might help their case? Well, I don't want to speak for what their strategy might be. I think if it is under seal, the only appropriate way to do that would be in the context of a motion before the court either to break the seal or some other motion for permission to use that information in an appropriate way. As I said, we're seeking to prevent that by getting it under seal. We're seeking to make sure that it doesn't get out to impress upon everyone that this is the kind of information that is so sensitive, that this court recognizes this myth, that it should be protected. What would be the consequences? Let's assume we disagree with you. What would be the consequences for the kind of discovery you've been providing with unindicted co-conspirators in the future in your office? Here's what I think the problem is. There are several problems here, respectfully. One is that if the question whether something is or is not a bill of particulars is defined by whether the defendant moves for a bill of particulars, then we've taken control of how this issue should be handled out of the hands of the government and the court. What we've said is basically if you make a motion for a bill of particulars, we have to wait to provide that information that may be helpful to the defense until after we propose a motion for a bill of particulars. The motion is denied, and then we have to make a decision on our own if we want to give that information to the defense anyway. The way this comes up is because we said, look, we don't need to wait. You want this information in the context of this particular case. We think it's fair and right that you should have it. We're going to give it to you and move the motion. The idea that by doing that, we then place that information in the public domain is in a sense counterintuitive because what it does in response to your question, Justice Eureka, is it gives us a disincentive to be cooperative during the discovery process, and that's a very bad thing and counter to the mission, I believe, of my office in the discovery process. When I bring it into agreement with the defendants, we're going to give this to you, but you agree not to disclose it. We could do that, but in this circumstance... That would be the first thing you would try. The next thing you would try would be a motion to expand the protective order, and yet what you did was you gave it to them and gave it to the court with a request. It wasn't even a motion, a request, that it be under seated. That's correct. To which the defense then objected to, but that was never litigated because at that point the media intervened on this particular question. But I also have a question. Could you add one more hour for him? Give us a little more on the consequences, the real-world practical consequences, which you were starting to lay out in response to Judge Sirica's question of how the interaction in a criminal case would go forward if the media's position were accepted and this were treated as a bill of particulars. What are the reverberations across later cases? Let me talk about that in the context of something that happened in Smith, for example. When we get a request like this, whether it's an oral request or one in a letter or one in a bill of particulars, we have to go through the thought process that we've already been going through in the context of the grand jury investigation as to who might or might not be an unindicted co-conspirator. The court knows there are a number of reasons why we might not indict someone in a conspiracy case who might be an unindicted co-conspirator. I think the two most common are probably, A, we've reached a decision with respect to a particular individual that he or she, that we don't have a sufficient quantum of evidence to charge that person. And by that, as I know you know, Judge, from having served as an AUSA, I'm not talking about probable cause. Because even though the grand jury standard is just probable cause, we don't indict unless we are confident that we have sufficient evidence to convict beyond a reasonable doubt. And so there are some number of people in many conspiracy cases as to who we have a certain quantum of evidence but not enough to warrant an indictment. The second category that's probably almost as big, and I'm guessing a little bit, are people as to who we have sufficient evidence to indict and maybe convict but decide out of an exercise of our own discretion that it's not appropriate to prosecute those people. And you've seen it, for example, in drug cases, there are 15 defendants in a wiretap and we charge 12 and we don't charge the three least probable that we could convict. So the question then becomes, when we're asked to identify what standard should we use, should we use probable cause for the people about whom there's been testimony in the grand jury? Should we use, because that's one answer, should we then identify them with respect to the bourgeois standard under Rule 104, a preponderance so that we know, because one of the reasons we're doing this is to notify the defense in appropriate cases, not a requirement of the bill of particulars, by the way, but to notify the defense that we may seek to introduce huge statements that would otherwise be huge, say, under 801B2E. And those are the reasons to do that. What we don't want to do is encourage us in any way to either be too constricted or too expansive in those definitions. But one of the things that's interesting about this is if you read the case law, there are dozens of cases that say undetected co-conspirators in this circuit and others. Absolutely, bill of particulars. Almost equal number of cases, maybe more, saying absolutely not subject to bill of particulars. And one of the reasons is because unlike bills of particulars for things like dates and times and what's the name of the bank, what's the registered serial number of the gun, those sorts of things, the identity of undetected co-conspirators is held in this circuit. It's 1971 in the DeKalb-Campey case and in other circuits, not to be something that actually binds the government. And so we're seeing this very weird place where if we're calling it a bill of particulars, even if the judge is right in this case, and it is one, it's not clear what its input would be for the case to play. If it's a bill of particulars, it puts into a place a presumption. Yes, that's correct. And you can overcome the presumption as, indeed, it was overcome in Smith. And I think Judge got absolutely the right answer here. Judge Jordan said your main argument is that it's not a bill of particulars. With all due respect, I'm not sure that that's our main argument. I'm certainly equally strenuously arguing that Smith controlled this case and that the arguments that were urged on the court by the media and that Judge Wiginton accepted were the result of Smith not actually being an incredible model of clarity as to what the factors should be. Well, you've argued in your briefing here today that it's just so important, the interests of these unindicted co-conspirators. So why is it that you reject those arguments, that there's a due process issue here, that if we were to say, you know what, even in light of Smith, we can't let this happen, because there's such a potent weight on the part of the unindicted co-conspirator, for all the reasons you've laid out, all of them, that it's unfair, that it pillories them in the court of public opinion with no opportunity for them to clear their good name, there's no venue for them to fight back against this, it's the government unilaterally sticking their name in a document and then hanging them out to dry. Why do you then, in the face of those arguments you yourself are making, say, yeah, but you know what, that due process stuff, don't worry about it. I'm going to give you three reasons. One is it would be totally unprecedented. And I will say, if the court were totally unprecedented, but the question is you've made such a great case on it, why shouldn't this be the precedent? Because what's a violation, what may be a violation, is not my denominating somebody like that, but it's doing it without any judicial input whatsoever. I'm not saying it's a due process violation, because I don't think it is, but the evil that we're trying to avoid in this case is the idea that the label is cast out there, and by the way, as we know since Smith, now we have an Internet 30 years later, it's even worse. The idea that we would do that in a context, as the circuit said in Smith, with no context for the public to evaluate it and with no court having looked at it. I'm with you, it is a problem, and I'm trying to get you to grapple with it. I understand your constitutional avoidance argument, I understand yours, I understand the Doe intervener's argument in that respect, but they've put an argument squarely in front of us, a constitutional argument as a backstop, and said even if, and I'm trying to get you to address that even if argument. You've made a persuasive case that yeah, this would be grossly unfair. Why isn't it grossly unfair to the point of being a problem of a constitutional magnitude, a due process violation? Explain why you diverge with them on that point. That's what I'm trying to get you to answer. For two reasons. One is I think to the extent that those interests are implicated, they will be adequately addressed in the context, even when this label becomes something that needs to be made public, which would be in the 801D2E context. I got you. That's another variation on constitutional avoidance. That's just saying hey, timing, we don't have to address it now. But assume for the sake of argument, we were at the point, we had to decide it. Why are you saying it's not constitutional in its magnitude? Because in that 801D2E context, A, there will be a very vigorous argument, I suspect, between the government and the defense over the status of that individual. That's first. And second, at some point, remember, we're in the context of a criminal trial. And so the question is, A, let's leave aside the logistical question of how that due process right would be addressed and taken into account. At some point what's going to happen is you're going to be in front of a jury with a judge trying to decide whether to admit evidence or not to admit evidence. And the supervening right under those circumstances would be the defendant's secondament right to a fair trial. And so while there may be some mechanisms to do it, I suspect, because I've never seen it play out. You're making the Seventh Circuit's Ladd case argument. I'm making a two-pronged argument. One is that there will be a time under Ladd when there will be the context that Slid said was lacking in that case. And as Ladd said, the animating principle in Smith was that problem. But I'm making a slightly different point, probably not as articulately as I would have liked, which is to say that having Doe and his lawyer in that context, I'm not sure how that works out in the dimension where the court is going to be looking out for at that particular moment in time is the Sixth Amendment rights of the defendant and the government's right to a fair trial under those contexts. And so the interplay, honestly, of how those things would all fit together is not something that I think, as I said, partly it's a constitutional avoidance question, but I think is not squarely before this court and is not one that the court should look at at this point, particularly because the factors under Smith so clearly do not mitigate in favor of the press in this context. And I think in this particular instance, the way Smith described it got those factors a little muddled up. So how would you suggest that the factors be that we consider? Well, I think the primary factor by a lot in Smith is the reputational-slash-privacy right, however you want to denominate it, of the unregistered conspirators. There were three other things that the court mentioned. That was noted in Smith. That was the most important, but there were three others that were mentioned in Smith. One was the question, and it was brought up by the media here, which we were quite frankly relied on some by Judge Wigginton. One is the fact that the unregistered conspirators may be or likely to be either public servants or public officials or elected officials. Judge Mandelman was quite vocal that that was something that was motivating her, but the majority opinion says that the topic of the case should not matter. So to the extent that the media urges that on this court and urges it on Judge Wigginton and she accepted it, I think that's a misreading of Smith. Second. So should we show it or should not take into account whether someone might be or is not a public official? I believe under Smith you should not. I believe that that doesn't make a difference. Keep in mind if we did that, it wouldn't be in tension with Smith necessarily because that was not a holding in Smith. Well, I'm not clear exactly what the holding was in Smith in that way. The problem is if you look at that long paragraph or two where Smith is describing what its animating principles are, it mentions that but then says, no, that's not something we take into account. I think that was probably a response to Judge Mandelman's concurrence, but I don't know for sure obviously. The second was the fact the court clearly was troubled, and Judge Mandelman was tremendously troubled, by the idea that the U.S. Attorney's Office had been in some sense over-inclusive in its list. But there are two points I want to make about that. First of all, the idea- Well, that's why Judge Mandelman joined the majority. That's correct, or at least I guess that's right. The question of over-under-inclusion is, here's the perverse effect you would create. If the government is over-inclusive, a bad thing, and then the list doesn't get turned over. But if the government does it as responsibly as it possibly can, and then the list does get turned over, you have created another perverse incentive for the government to behave not in a way you would want. And I don't think that that's really what motivated the court in Smith. Excuse me one second. That's a lot of your moment, right? It's my moment. The problem with the over-and-under-inclusive factor, aside from that, is that if, in fact, the balancing test under Smith, because it's an issue of constitutional dimension, requires that you have a component of government interest, which they clearly found this is, and second, that you have a narrow and tailored remedy, if the motivating factor for the court in Smith had been the over-inclusive list, what was the right remedy? The right remedy was not to suppress the whole list. The right remedy would have been to send it back to the district court and say to the district court or to the government, your list is too long. You have people who are, quote, conceivably, close quote, on the list. Now, apply it to this case. You've only got one person who's intervened that is not before us. If that person is redacted, what is your view as to whether the remaining persons on the list should be made known? Our view is under Section 2108, Judge, that you have the ability and the power to actually go beyond that. If you think the ruling is wrong, the entire ruling should be wrong. If the court's inclined to think about that, we'd actually request permissions. This was raised in, I think, Doe's reply, as were a couple of other issues, to file a 28-J letter on that particular question. But my instinct is that you have the authority. If you think that the district court weighed the Smith factors inappropriately or they're out of balance, that the court should actually address the entire controversy in this particular case, particularly since the government is now properly before the court. But if the other people did not intervene after the May 10 ruling, what standing does anyone have to make that argument? I think the government does. I think the government has the power to make that argument. But you didn't make the argument at that time. No, but we're making it now. It's properly before the court, I believe. If you didn't appeal and you didn't make the argument in the district court, why are you allowed to make it now because Doe has made it in? What you're doing is you're bootstrapping onto Doe's argument, which is not with respect to them. They're just saying somehow if you disclose this with respect to everybody, by process of elimination, they'll figure out my guy. No, I'm not making that argument, Judge. I appreciate that. I'm not saying whether Ms. Kramer is right or wrong in that particular argument. What I'm saying in this particular context is that once Doe— And that's consistent with what you've said with regard to not making a due process argument. I think if you found that Doe didn't have standing, that would be problematic. But once Doe has standing, I think the entire order is before the court, and redacting Doe's name doesn't change that. And I don't think that that's the appropriate way to handle it under these circumstances. Because? Because, as I said, I believe it is now all properly before the court. No, but the question then becomes is it true that if Doe's name is redacted but the others are revealed, that somehow through a process of elimination they'll figure out it was Doe was Doe? I can't answer that question, Judge. And I'm not sure how to answer that question properly before the court in an open setting. I just don't know that I can. But I'm not sure that that's right or wrong. I just don't know the answer to that question. I just don't think that that's the appropriate remedy here. I think if the issue is squarely before the court on the property of the balancing under Smith, and if Smith—I'm moving aside my question. Remember, Smith doesn't necessarily apply to discovery. Smith only applies to bill of particulars. If the court decides— Only because we're on that particular point. If this is a discovery letter, we don't need to have this conversation about Smith at all. I agree with that. But if it's a discovery letter, then the question is if it's a good cause standard. And if it's a good cause standard, respectfully, Doe wins and the government is right that this is a discovery letter and shouldn't be added. If, on the other hand, the court believes that it is a bill of particulars, then the Smith standard does apply, the Smith balancing does apply. And if the court believes that the Smith balancing has been appropriated by the court, both because of the government's lack of clarity and Smith's lack of clarity, I think that the right thing would be to reverse the order entirely. And do what with instructions? With instructions to the court to seal. That's correct. To seal the entire list. Yes, to seal the letter. That's correct. It's just a letter. So, yes, to seal the letter, the list. And does that end this particular dispute? Or is Judge Wigginton free to do something else? Under those circumstances, I think that the right remedy is to seal the list. I think there's nothing before the court. I remember there's nothing that the district court was asked to decide when we submitted the list except to seal it. And Ms. Kramer accurately quoted our brief. We said it was beyond ironic. I'm not sure what is beyond ironic. It's not a particular philosophical use of phrase. But it would be a bad result, as in pansy, if when we present a document to the court to protect its contents, that act turns it into something to which people have access. I understand that. I'm just trying to figure out what is the exact remedy that you would seek. The remedy that I would seek is a reversal of the court's order and a determination by this court that it is either A, a discovery letter, or B, it's a bill of particulars to which the slip balancing applies and therefore should remain sealed. Now, are you backing off the assertion that it's not a bill of particulars? No. You know, when you're saying if, if, let me, I know we've tried this, Graham, already, but I'd like you to sum it up so it's on one page of a transcript if we can get it. I know I'm giving you only one page. I've got five. This is what I'd like you to respond. This is from the media intervener's reply. They say, quote, page five, that the government now applies its 20-20 hindsight to amend and bolster its prerecordings, claiming without any basis that the government conceptualized and treated the letter as a vehicle for voluntarily delivering discovery to defendants rather than as a formal bill of particulars that was ordered by the district, quote, unquote, when they're quoting your briefing. Now, I would like for you to just explain why their assertion that that argument you made and their claim that it was without any basis is wrong. What's the basis for your assertion that the government conceptualized and treated the letter as a vehicle for voluntarily delivering discovery to defendants? In short, why should we look at this at the first step, say it's not a bill of particulars, and stop there? One, it was never ordered to be filed. Two, the district court did not make the findings that ordinarily underlie a bill of particulars, which are surprise, preparation for trial, and most importantly, the double jeopardy question, and whether this would, in fact, create an issue that, if not properly hewed to, would create a variance at trial. Third, while I recognize that it's not the bulk of the brief, that pretrial communications referenced in our motion to have opposition, and four, that it doesn't bear the hallmarks and characteristics of a bill of particulars. And by that I don't mean that it had to have a particular form, but all we did was send a letter to lawyers saying, at this moment in time, right now, the people as to whom the government has sufficient evidence to identify them as undetectable conspirators are on this list. That doesn't act like a bill of particulars. It won't arbitrarily introduce the statements of other people at trial under 801-D2E. It won't change the way the jury is instructed at the end of the case. If there are people who are or are not on the list, it won't create a variance at trial under clear case law under the circuit, and so it is not acting itself or have the effect of a bill of particulars. We didn't treat it that way, and as you asked me earlier, the perverse incentive to hear is that if we are the subject of a motion for a bill of particulars, and if we decide that the easiest and most prudent course is to say, you're not entitled to one, but you know what, we're going to give you the information anyway to help this thing move along faster. If that's the result, then that's a bad conclusion to draw from that. We did not say that. In fact, our cases could not be more interesting. We didn't say the bill was appropriate. What's your response going to be to that? And I'm sure Mr. Rosen will speak for himself, but does that remove any possibility for public access to information by putting it strictly in the government's hands to say, well, we give stuff voluntarily, so it's not really a bill of particulars. And therefore, no right of public access attaches. Before you could rule on a judge, we handed it over and we did it on our own, so it can't be a response to a bill of particulars. What's your response to that? The answer to that question, it could be under certain circumstances, but not here. Would that be problematic? It would be problematic as you describe it because we didn't create an opposite incentive, right? So we take your concerns into account, we're concerned about that. How would we limit that if we were to rule in your favor so that that problem wouldn't arise? So here's my answer to you, Judge, if it's a discovery letter. If you look at the six factors that the courts take into account for common law rights of access, if you look at the First Amendment analysis with judicial proceedings, what the courts are told to be concerned about by the Supreme Court in the litany of First Amendment cases, expanding the right of access to various things in the criminal system, is what goes on in the courtroom, what goes on adjacent to the courtroom, what we have never said, what those cases have never said, is that that sunshine antiseptic, which is basically a way of summarizing those six factors, is designed to deal with the decision about how the United States government, the Department of Justice, characterizes the role of a particular person for indictment or not. Because, as you know, Judge, only under very limited circumstances, in which there's an allegation of grand jury of use or a selective prosecution motion that rests on inappropriate factors like race or sex or sexual orientation or ethnicity, except under those very limited circumstances, we don't use that First Amendment access analysis to take a peek behind the decisions that we make about whether people should be indicted or not, how the jury treated them, how they're viewed pre-trial by the government. And if you go the way that the meeting would suggest, and it's sort of embedded a little bit in your question, you run the risk of exporting that analysis to a place where it has never been exported before, which is on those particular questions. And I think that would be a very bad thing for the way we do business as a justice department and to protect the secrecy of the grand jury process and the discretion that prosecutors justify what you should and must have to make those decisions in this particular context. Thank you. Thank you. We'll hear from Mr. Rosen. Turns out it wasn't an hour. We only had you up for about 36 minutes. Yes, sir. You did reserve the other 24 for rebuttals. Yes, sir. Thank you. And I'll reserve another 24 for rebuttals. Bruce Rosen. You're going to tell me something about both of them now, right? Bruce Rosen, McCusker, and Selma Rosen for the media at police. Just if I can, before you bombard me, I just want to go to one point. We're so quiet we don't bombard people. I just want to go to one point, and the point is that Smith stood for a First Amendment right. It stood for a common law right. Those things were mushed together a little bit by the decision, but, in fact, there is a First Amendment right requiring a compelling interest narrative. A First Amendment right with respect to, in that case, a bill of particulars sets out and, in effect, supplements and contours the indictment. Therefore, it's a public document. The question here is if it's a discovery, it may be helpful to the defendants, but it isn't a bill of particulars. So there is a difference. And even if it is a bill of particulars, all it does is give a presumption of access as opposed to not having a presumption of access if it were a discovery. That would be for common law access, Your Honor, but not for a First Amendment. It's a compelling interest test. Why don't you go straight to that first step, bill of particulars versus not bill of particulars. Your sure reply is, candidly, you say the government just says stuff on their say-so, but you're doing a lot of say-so-ing in your sure reply saying without any basis or they don't give any reason. To the extent you couldn't discern basis from the argument in their briefing, I've asked Mr. Fishman to give you straight out what the reasons are why this should not be viewed as a bill of particulars. I'm giving you your chance now, Mr. Rosen. Just take it head on. First of all, he said there was no order. So let's look at these four cases that I gave you that said that both particulars are voluntarily turned over regularly. This did not require an order, but it did have the option for an order because Judge Winington was waiting to see what would happen with his omnibus discovery motion. But you're not disagreeing, and I'm not sure how you could, that unlike in Smith where a bill of particulars was ordered to be produced, in this case there was no court order saying produce a bill of particulars with that information. As a factual matter, as a historical matter, that's correct. As a factual matter, Judge, you're correct. It isn't normally the case that, at least in my understanding, although I wasn't an AUSA or anything like that, my understanding is that if you put out a bill of particulars, you as a matter of, you know, 101, Rule 101, you list it as a bill of particulars. Judge Ambrose, there is no doubt in my mind that whatever letter that they turned over to the defendants in this case so that they can go through one and a half million documents that were provided by the government and so they can figure out who those individuals were that possibly would have hearsay evidence introduced under 801, the defendants will no doubt have a field day with a motion saying, wait a minute, you told me these people are unidiacal conspirators. You cannot have it both ways. What was happening in this case, you can't have it both ways, Mr. Rosen, but what you can certainly do, and this is the point you should be rebutting, right? Mr. Fishkin says, look, the fact that we give something to assist the defense in pretrial preparation doesn't make it a bill of particulars. That would make everything a bill of particulars. The media's argument proves too much. Of course we hand over a list like this because we think it's the fair thing to do and we'll assist and prevent a fair surprise, but that doesn't convert it into a bill of particulars. What is it about this list that makes you say it's absolutely a bill of particulars instead of controls? Point us to that. Why should we accept that it is a bill of particulars and not just what they say it is, a discovery assist to the defense? First and foremost, it was provided in response to a bill of particulars. Without any reservation, without any statement in their response, and it was only a few pages separated from their vociferous opposition to turning over everything until a few pages later where they say, okay, we'll give you this, we'll provide this under a seal. They say, and I think the record bears it out, that they did object to the bill of particulars, that they said you're not entitled to information, but we're going to give this to you. If that is correct, why does the fact that they choose to give some information in the face of their own assertion that it's not something the defense is entitled to as a bill of particulars under Rule 7c, why does that gain you any traction in calling it a bill of particulars? They can call it what they like, but it's very similar to someone who does a lot of civil litigation, and in civil litigation you're always going to object to interrogatories, and you're going to say I'm not giving it over because of X, Y, Z, you're not entitled to it, but on the other hand, without raising the previous objections, I'm going to push it. Sure, but this is hugely different because the criminal arena is not like the civil arena. A bill of particulars, as Judge Stapleton was careful to say in Smith, is something which is tightly tied to the indictment. It has an effect on the indictment, and it has formal consequences to what the government can prove at trial. It limits the capacity of the government to make a case. There are some very loose civil rule analogs to that, but nothing as formal or as consequential as the effect of a bill of particulars in binding the government and affecting double jeopardy rights, et cetera, of a defendant. So please don't go to civil rules. Stick with me on the criminal context that we're in, and help me understand why if we were to accept the government's assertion and those assertions that this is just a response voluntarily given after saying it's not a bill of particulars, why we should then say, no, it really is a bill of particulars. The government had three opportunities to say that it wasn't a bill of particulars, and it never did. Two in front of the district court. You're absolutely correct, and that's an argument, but they also never said that it was a bill of particulars. They also never filed something with the court that said it was a bill of particulars. But they don't have to say that, Judge. There's no reason why they have to say that. It has to be said affirmatively. Well, I just said to you, my understanding, and I could be wrong, and maybe on rebuttal Mr. Fishman can correct me, but my understanding is that if you list a document as a bill of particulars, you are bound by that document at trial. It is, in effect, a supplement or perhaps a limiting, but in some way sets the parameters of the indictment, and you can't go beyond it. However, if you just provide a letter that lists what the government believes are unindicted co-conspirators or evidence of them, that sounds like discovery. But, Judge, it sounds like discovery in hindsight because the government is painting it as discovery. The judge, the trial judge, what kind of makes it something that affects what must or must not be proven at trial by the government in order to get a conviction? The defense counsel in this case wrote a letter objecting to the way that this was presented. If I understand it, what was filed ultimately was a letter called a confidentiality letter that lists what the government believes, the persons that have evidence that would show that they were unindicted co-conspirators and that a case could be made against them for whatever reason the government has decided not to bring that case. That doesn't sound like something at trial that the government needs to deal with if it's discovery. Judge, they asked for a bill of particulars. The defense, according to Mr. Barone's counsel, believed that they had a bill of particulars. The trial court judge below believed it was a bill of particulars. And the government went out of their way not to bind themselves. In their response or the briefing that they filed with regard to Barone's request for discovery, which included a bill of particulars, the preliminary statement, page one, they give and take of a criminal prosecution in the period leading to trial was characterized by extensive informal correspondence and communications between the parties. Next paragraph. This type of pretrial communication to fulfill discovery obligations. And then it talks of, later on, pretrial communications again. If that isn't discovery, I don't know what is. They have language later on that makes it a little more obtuse. And if I may supplement that question, too, the government maintains that this is routine. When evidence from unindicted co-conspirators may be used at trial, that they do provide this information as a discovery matter, not as a bill of particulars. And I wondered if your experience is contrary to that or whether you're contesting the routine nature of this kind of discovery. I cannot address the routine nature of this discovery, but I can in this case say that a specific request was made, a specific request, and the material was provided. It never said anywhere that we reserve our rights, this is not a bill of particulars. Did they, in fact, say you're not entitled to this information? That's what they say they said. They said it. There's no doubt that they said it. We're going to be in trouble as long as you keep saying without any reservation. If they said at the jump, you're not entitled to this, but we're going to give it to you, isn't that a reservation? Isn't that a statement that we're not doing this because we're compelled to, we're doing this because we choose to, and that's quite different from a bill of particulars under Rule 7c. It never says that, Judge. It never goes beyond that to say we're not giving this to you as a bill of particulars. I think we're really getting too deep into semantics here because it really devalues Smith. It devalues what Smith was saying as what's an extension of the indictment. Was Smith absolutely tied to the question of bill of particulars? Absolutely. Okay. Isn't this a dispositive point? If you lose on the question of whether this was a bill of particulars, you go home with no right of access, First Amendment, or common law, correct? That's correct. Okay. I don't think we can get too deep on this point. It's a turning point. If we get past it, there are other hurdles you may have to cross, but if you don't get past it, it's game over. So let's talk for a minute about the issue that we discussed with Mr. Fishman of consequences of accepting the media intervener's position here. They say if you accept their position, then you will, and I'm going to paraphrase battle here, but I take their position to be you will create a perverse disincentive. That is, you will prevent the exchange of discovery information in criminal cases that has become the norm and that is healthy for the system because you will force the government to withhold things and fight everything out in court. What's your response to that? My response to it is that that's just not true because 31 years this case has been out there, and 31 years there's certainly been a lot of informal discovery exchange during that 31 years, and just because what happens in this case, and that applies only to bill of particulars, and the disincentive will be to rename these lists that are essentially bills of particulars and rename them or provide them in some way where it doesn't fit neatly into a Smith case so that you don't have to provide it to the public. I think the government itself would probably acknowledge they could have done a better job of making it clear that it wasn't a bill of particulars. So that's probably sure to be a consequence of the discussion we're having here today. Well, you've said that it's a bill of particulars repeatedly, but the purpose of a bill of particulars is, the formal reason, is to give notice when an indictment is deficient. That's when a bill of particulars is ordered, and there's lots of law on that in court in here. In this instance, wouldn't you concede an extraordinarily detailed indictment? It is a detailed indictment. Okay. So if it's a really, really detailed indictment, assume for a minute that the defense had never made a request, and at some point the government had decided it ought to give this information in fairness the way it describes it sometimes does. Would you be able to come to court and say, that's a bill of particulars that gives information to assist the defense? Judge Shulman, there are probably 10 to 15 references in this detailed indictment to others or other conspirators, and it goes through the indictment. It permeates the indictment. You cannot really understand who you're dealing with for the defense, maybe perhaps for the press and the public as well, without really understanding who these unindicted conspirators are. I'm sure that for narrative purposes, it would be a lot more interesting to know who the people are, but what I understand a bill of particulars to do is to tell a defendant, this is what you're charged with, this is what you're facing. Not all the background facts, but this is the charge you're facing. I've probably asked the question poorly before, but this is what I'm trying to get you to grapple with. If this doesn't serve the purpose of a bill of particulars, because the indictment itself is detailed enough to put the defense on notice, why should we treat it as a bill of particulars? Because there are 1.5 million documents that were turned over by the government to the defense, and the defense needed to know who among the persons referred to in those 1.5 million documents were going to be others. Without knowing that, the defense is considerably disadvantaged. It's a big problem. This is not just a willy-nilly, please give us a little more. This is a perfectly detailed indictment where there's no reason to get more. There are several references to this indictment to others and actions by others. So if you're a defense counsel and you get that information, you go, okay, now I know whom I need to focus on in terms of a conspiracy, right? That's exactly right, and I need to rely on what the government is telling me in this circumstance. Do you have any law at all for the proposition that the government can be held to that list? Your argument now and your argument in your briefing seems to imply that the government would somehow be bound and strictly limited by what's in the conspirator letter. What's your authority for that? I don't have a case in front of me now, Judge, to be honest. But on the other hand, there's no reason to believe that the defense should not be able to rely on what they were told. Certainly they can rely on it, but again, this goes to the nature of what a bill of particulars is, right? A bill of particulars, it does bind the government. The government has come forward with cases. They've got them. There's law that says they're not limited to people that are on that list. Judge, there's no form to a bill of particulars. This letter would just as well be a bill of particulars. I just asked rhetorically, is this court requiring these to say bill of particulars before it's a bill of particulars, or does it need to ask the question that is included in the specific request, a bill of particulars for the names of undictated co-conspirators? That's exactly what happened here. That specific question was asked, and the government said, we're going to give you that. We're going to supply that to you. How is it not a bill of particulars if it's exactly what was asked for? Is there a functional aspect to this? If it doesn't function as a bill of particulars, why does the fact that the defense wants to call it a bill of particulars make it one? I take the government's position to be, and you heard Mr. Fishman make this point in the outline I asked him to give, that it doesn't function as a bill of particulars. It doesn't limit the government in any way. It doesn't add information that's not already fairly in the indictment to put the defense on notice, so it doesn't act like a bill of particulars. That's a functional argument. Do you have a response to that functional argument? If they called it a bill of particulars, then it was exactly the same information. It would be a bill of particulars. A moment ago you said it doesn't matter what it's being labeled, and now you seem to be saying that no matter what it's functioning, I'm following the court's line of reasoning, which is that it seems that the government needs to call it that, and I don't believe that's the case. Sure, it isn't the case, because if they call it Bob, but it functions as a bill of particulars, it's a bill of particulars. The question isn't what they call it, it's how does it function, and they say it doesn't function as a bill of particulars. The trial judge believes that it's a bill of particulars, and the trial judge is the one who was watching over every aspect of this discovery and expected that if there was going to be a problem with whether a bill of particulars was required, that it would be brought before her, and there was no problem, because that's what she expected. That's what the defense expected, and to say for the effort, not purposely, and I'm not putting a nefarious motive to it, but after essentially negligently misleading the court, at very least, if indeed that this was their position now and not just 20-20 hindsight, oh, the bill came up with a good issue, let's join it in the court of appeals rather than before the court, if that was the case. If we assume you're right that they waived it or judicially stopped, isn't the very same argument in front of us because of the Doe-Intervenor? I mean, can't the Doe-Intervenor make that and has made that same argument? He's made a similar argument. The argument is it's not a bill of particulars, so even if we were to accept your position, don't listen to the government because they negligently misled the district court, we'd still have to grapple with the question of is it a bill of particulars because the argument is fairly put in front of us by Doe, correct? Except that what Doe also says is, well, look, the government agrees with us, so therefore that's another factor, and so it's a little circular. Well, assume we were to say, okay, you don't get the benefit of the government's thumb on the scale. We're still dealing with the question, and Doe has put it in front of us. We have to answer that question, right? And we also believe that Doe waived these arguments as well, and we set those forth in our brief. And I'm not trying to avoid the question. It sounds like, if I were to guess, what Doe was attempting to do was have the government carry the water and go under the radar. Which, Judge, is not exactly so because Doe's primary argument when Doe first came to the court was due process, and the government, as you heard Mr. Fishman say here today, was not carrying that order, not carrying that due process order, and would never carry that due process order. But today's primary argument is First Amendment. Right. Today's primary argument. But the reason why Doe waited in the wings was because he thought that the government was going to carry the water, and then the government never made the due process argument, and the government never made even the, this is not a bill of particulars. The government's argument was always, well, this isn't adjudicatory, which is like, goes directly against the bill. The government's argument at one point, and I'm looking at page A136 of the appendix, in bold, the caption to the particular section is, defendant's motions for bills of particulars should be denied. And then it goes on below that they're asking the government to prematurely commit to specific evidentiary proofs. A bill of particulars is only required when an indictment is too vague to permit the defendant to understand the charges and prepare defense, avoid unfair surprise, and assert a claim of double jeopardy where appropriate. And the indictment here, as you know, was very detailed. I don't believe that the government had an opportunity to go to the mat with that, and to have the judge rule that they're not entitled to one. A request was made, and the same exact information that the defense wanted was provided. I don't make light of this, but it walks like a duck and it quacks like a duck. It is a duck. Well, Mr. Rosen, address the timing issue for us, would you? The government, in winding up its presentation here, and in its briefing, argues, listen, this is something that may never come up. The due process issue here is not one you have to address because, indeed, it may be that there is no trial. Indeed, if there is a trial, it may be that these people are never named. There's no need to bring them up because there's no attempt at getting co-conspirator statements. And so the media is pressing you to make a ruling when there's just not an immediate need to do it. Can you take that on? Of course, Judge. There is a First Amendment right and a common law right, according to this circuit, to this information. It does not require a judicial determination of any sort, contrary to what the government indicates. Okay, so assume we accept for the sake of discussion. Then why should we wait, Judge? Because we're entitled to this now. Don't assert you're entitled to it now. That's the very point I'm trying to get you to lead me to. Their argument is you're not entitled to it now because even if one were to assume that this was a document as to which there was a public right of access under the First Amendment or the common law, that right is not unalloyed. It is qualified by these other privacy interests, and those privacy interests trump that First Amendment right unless and until it comes to a point where there actually may be a need to divulge this at a trial. That's the issue, the way they framed it. Maybe they framed it improperly or unfairly, and you can take the framing on, but it's the issue I'd like you to address. There is two separate things. There's a history and experience and logic to the First Amendment, and that goes by process. That doesn't require any filing, and this just says that those are particulars. They're an extension of the indictment, and you're entitled to them, compelling interest, narrowly defined, and that requires, and by the way, Smith incorporates and assumes that there is going to be reputational issues. It assumes that. You don't have Smith unless you, because if you're releasing unindicted co-conspirators, you are- Well, Smith says that mere embarrassment isn't enough. That's right. But it also says in that case- No specific harm judge has been identified here, and every case in this circuit where you're talking about, you require specific harm. All right, I'll flip that around. What is the harm if the names are not divulged at this time? The harm is to the First Amendment. We have a First Amendment right. I mean, I can go back to Elrod v. Burns, which is like every moment- Judge Jordan, didn't he say it correctly, that it's a First Amendment right that is balanced against privacy rights? As analyzed by Smith, yes, Your Honor, that's the way it is. And in Smith, the situation there was egregious in terms of there was an active FBI investigation into every name here. Here, it's a completely different situation. The list is finite. The government has said we invented this. We believe there's enough evidence here to say these people were active in this conspiracy. Not enough, but they are active in this conspiracy. Your Honors, this- And I also- Let me go back to one other thing that was mentioned earlier, is whether the public interest is limited here. Smith, to some degree, is a little unartful in the way it melds together the First Amendment and the common law. And it seems like it's saying that the interest of the public or the high public interest in this particular case may not be a factor in the history and logic. That's what it's really saying. It's just not that important to that. But to the common law application, it's very important. This is something that the people of New Jersey, New York, and God knows where else are talking about. This is a vital interest to many, many people. It involves core issues of core free speech issues in terms of the functioning of government. We are talking about how- All right, now flip it around. Let's just say you are Mr. Doe. Okay. And there's been speculation about you, but you are not indicted. There appears to be a pretty decent chance you will not be indicted. Right. There's a chance that you will not be asked to testify at trial. And there's a chance that you will not even be brought up at trial as one of the, quote, others, close quote. If you're Doe, isn't that a very significant privacy interest? If you are Doe, you've already been out there. Everyone knows that you are one of the people who were either mentioned at a legislative hearing, speculated about in some sort of media, or around the coffee bar at work. Yeah, but there's nothing that's been official. It's not going to be the first paragraph of your obituary. It's not going to be the first paragraph of your obituary. Actually, it may put to rest, if you're not Doe and you aren't on the list, it may put to rest the situation for others who have been speculated about. You can't really say that the reason to let this out is because all the people who are close to being indicted, co-conspirators, will be relieved, right? I mean, the fact that some people aren't on the list doesn't mean that the privacy interests of people who are on the list are nullified. There's no doubt that there's a privacy interest. Smith recognized the privacy interest, and Smith would not be Smith if it did not say that there was, these are names in a list of unindicted co-conspirators, and we believe there's a first amendment. In a group of particulars, ordered by the court. Correct. No, I disagree, Your Honor, that it requires an order by the court. In that particular case. In that particular case. It never says in the case it requires an order by the court. It is a fact in Smith that there was a bill of particulars delivered subject to a court order. Those are the facts of Smith, right? That's correct, Judge, but there are also many cases, and we cited some of them, where these type of things are turned over voluntarily. This is part of what the government was saying in their preamble to their original brief. This is how we do things, and I understand. You need to do things that way. But when a formal request for a bill of particulars comes up. So your position really is what the government says, which is that the mere fact that a defendant calls what it wants, a bill of particulars, is enough to make whatever the government delivers a bill of particulars. That's the media's position. That is part of the media's position. It has to be part of the media's position because that is exactly what happened. Because if it doesn't work, you guys lose. We never lose. Probably so. Probably true. We do lose, but we shouldn't lose here. This is a very important issue, and we don't take any of this lightly. The government has a job to do. We recognized it. We think they played a little fast and loose because I think they want to have things both ways. They don't want to be put into the corner where the defense will pick up on this and say that this is a bill of particulars, yet they want to be able to tell the judge that we provided them with the information they required. I have two final questions. You say that the harm here is to the First Amendment, and obviously the First Amendment is the First Amendment. It is critical in all five aspects of it. But if these names are not, if its name is not divulged, or if the remaining names are not divulged, how, explain to me the actual injury to the right of the press under the First Amendment. Well, it's the right of the press and it's the right of the public, and it's the right of the public to know who these, assuming it's a bill of particulars, which is certainly our position, and I hope it's the position of the Supreme Court. Now, I'm giving you a chance to get on your soapbox. I spent about 40 pages on it, Judge. Maybe that's why I skimmed over it. I'm just teasing, just teasing. This is, as I was saying earlier, this has taken center stage in New Jersey politics. It's taken, at times, center stage in national politics. This is an extremely important fact that goes to how deeply an alleged conspiracy has infiltrated into state government and how deeply this went into the Port Authority, which is a bi-state agency, and how deeply it affected the functioning of government. Because one thing the press does very well is investigative reporting when it has the personal power to do so. Thank you for recognizing that, Judge. But so a lot of the information the press has probably already dug into, has it not? Judge, I think I would take Judge Winginton at her word that there's no surprises here that everyone on this list has somehow been identified. Okay. And that does not lessen the First Amendment. As a matter of fact, in a case that was many years ago, I argued, U.S. v. Chang, which was about access to a 5K letter in U.S. v. Chang, it was Judge Rosen said that the ink was in the milk, and it's already out there. What's the big deal? And I'm not saying the ink is in the milk here, but this is a very public issue, and these people are not private people. And when you're weighing privacy rights, when you're weighing privacy rights against public figures who are public employees or appointed officials or political operatives just like that Republican chairman in Smith too, you know, their privacy rights are just not as important to the public understanding exactly what was going on here and for them to hear what the government thought or who the government thought were members of this conspiracy. Okay. My final question is if I had asked the other side, if we ruled in his favor, would that apply only to Doe and not to the other unindicted co-conspirators? And your response would be? Yes, absolutely. I understand. Because? Because no one else is arguing for the others. And I would say Doe has not shown special harm, and certainly there's no harm shown except for the inherent harm that is recognized by Smith about this embarrassment factor that is recognized by Smith, and that's all these other Does have. And then you look at those papers, and Doe keeps saying, I'm going to be called a felon. You know, I don't want to make light of this. It could be embarrassing, but we're talking about a list of unindicted co-conspirators, not indicted co-conspirators. We're not talking about a felon. And I heard the U.S. Attorney refer to this as making a list of felons. This is not a list of felons. If they're indicted, it would be known. But if they're unindicted here, it may not be known, and at least one person is very concerned about his privacy. You know, I would be nice to know exactly why the person was concerned about their privacy, other than saying there's some general harm, which is the position of this court. One reason may be that there's not going to be a trial. Judge, I appreciate that. There may not be a trial, but at the same time, these First Amendment rights exist. They exist now. Whether or not there's a trial. Thank you very much. Thank you very much. We did give you over 40 minutes, so I wanted to be sure you had more time than Mr. Fishman. He mostly speaks more than me. You're not hearing me deny it, either, are you? Just faster. Thank you. Yeah, it's better fast. Your Honors, to briefly respond to some of the points made. Mr. Rosen just told this court that the ink is in the milk. Your Honors, what we're asking this court to do is to not even open the pen. This conspirator letter was and has always been a discovery letter that was furnished to the defendant to provide them with the fruits of the government's investigation so that they could perform their own investigation. Mr. Rosen went on and said if it looks like a duck and it walks like a duck, it must be a duck. No, Your Honors. In this case, it must be a duck, and it's not. As Judge Jordan mentioned, there is nothing as formal and as consequential as a bill of particulars. This is not a situation where you can just call it or say that it looks like something. A bill of particulars supplements the indictment, as Your Honors have noticed. It binds the government to its terms. It sets the parameters for trial. For all of these reasons, the conspirator list, which provides the names of unindicted co-conspirators, was not ever, nor is it now, a bill of particulars. And by the mere act of providing the information to the defense in response to a pending motion that said it's a motion for a bill of particulars does not a bill of particulars make. Now, there is an undeniable right of the public to access certain information, and that's grounded in the law. And as Smith held and reviewed the history of that right, the right of the public is to make sure, as I mentioned earlier, that when charges are leveled, they are done so in broad daylight. It's so they can evaluate the conduct of the court and counsel. Those are the rights of the public, and that's what their access attaches to. And while the public may be very interested in wanting to know, as Judge Jordan said, the narrative piece of this and who these people are, that is not a right to which they are entitled to know that information at this point. It's not about what they would like to know. It's about what they are legally entitled to know. And Smith makes that clear. As a preliminary matter, this was never a bill of particulars or other judicial record to which the presumption of access attaches. To the extent this court finds that it is such a document, and Smith were to apply, the scales of constitutional liberty must kick decidedly in favor of Doe, and his privacy interests in revelation of the names at this point in time undoubtedly outweigh any interest of the public in finding out this information. Thank you. Thank you. Let's hear from Mr. Fishman, please. Actually, one of the questions might be that if you get the confidentiality letter, you could say to your defense counsel, now I know about whom the government believes that there was a conspiracy with. And I can eliminate, I can now deal with A, B, C, D, but I no longer need to deal with X, Y, Z. And in effect, isn't that limiting or setting the parameters for what the government intends to prove at trial and in effect be what a bill of particulars would do if it were denominated as such? I think it's premature to answer that question, Judge, without context, with all due respect. And I think you have to just step back for one second and realize the context. Let's just make it theoretical. You're saying? Not necessarily. Because it depends for the purpose of which that information is being provided. So if, for example, we are providing that information only for the purposes of identifying which co-conspirators might be identified for 801B2E purposes, the answer is no. If tomorrow or next month or during the trial, we seek to introduce evidence at trial, and we say, and what did John Doe say to you at the meeting? This is the way it comes up. And the defense rises and says, objections, you say. And we say, sidebar, please, Your Honor. For us, from our perspective, John Doe is an unindicted co-conspirator, and therefore his statement is admissible under 801B2E. The court will then be called upon to make that call. The fact that we have not identified John Doe to the defense at that point, John Doe 2, somebody else who wasn't on the list, we may have a tussle with defense counsel about whether they've been surprised in some way. But I think the answer to that question is largely going to be no. If they have some reason to know that statement, that evidence was coming. I don't want to make the argument too specific because I don't know the context, but if that's the purpose, the answer is no. If there's a question, when the jury is instructed about with whom the defendants conspired, the Dekalb Candy case from this court in 1971 seems to suggest that even then the answer is no. But we might have a tussle about that at the time that the jury is being charged, about whether there's a variance. But to the extent to which that is binding, in the sense that we were talking with Judge Dorman about before, I think the answer is at this point no. And that seems to be the jurisprudence of this court. What about the argument, and maybe this is better addressed to Ms. Kramer, that there are balancing of rights? You have the right of privacy, which we've talked about, and the First Amendment right might be the right of the press to let the public know those who serve that public who are doing their jobs, who are not, who are letting personal matters, personal vendettas, personal dislikes get in the way of their jobs. Isn't that a precious First Amendment right? Absolutely, but it has nothing to do with the judicial proceedings in which we are currently engaged. So, for example, we have e-mails from lots of people. We provide those to the defense. Those would give the press insight into how they conducted their jobs. But that clearly is not subject to this. What the press wants in this particular instance is not information about what people did or what their e-mails say or how they did their jobs. What they want is an opinion, effectively, based on evidence that we have collected with the grand jury about what the U.S. Attorney's Office thinks was the role of particular people. That's what this is about. It's about our view today, or in January when we provide the information, about whether one or more people were involved in a conspiracy in a way that we believe to be sufficient to identify them, but not appropriate to charge. If I could indulge you for one second. If we had investigated this case for the year and three or four months that we did, and we had concluded at the end of that investigation either that we didn't have sufficient evidence to charge people and prove it beyond a reasonable doubt, or we agreed with the defense's contention that this is not actually something that should be charged federally at all, we would have, under those circumstances, concluded among ourselves that people were not to be indicted. They would have been unindicted co-conspirators, but we wouldn't tell anybody that. We would simply close the books, say we're done, and go home. But the press does not have the right to get at this juncture. They may. If you look at Smith 2, if you look at Ladd, if you even look at the footnote in Smith where the court says, no, don't necessarily give out this information. What the press does not have right now under the First Amendment is a right to what we think about the roles of people we have elected not to charge right now. Thank you. Thank you very much, Counsel. Thank you very much. Very well presented arguments. I would ask, Counsel, if you'd get together with the clerk's office and have a transcript made of this oral argument, split it three ways, if you would, please. And also, in connection with the letter that was with the court, if you would get together with Ms. Consgrove and arrange for that to be given to us under seal. Absolutely. Thank you very much.